[No. 5779. Decided December 11, 1905.]

ANDREW JACKSON COLLIER, *Appellant,* v. GREAT NORTHERN RAILWAY COMPANY et al., *Respondents.*[1]

RAILROADS—NEGLIGENCE—DEFECTIVE TRACKS—OWNERSHIP—OTHER RAILROAD. Where two railroad companies own parallel tracks along a city street, each making occasional use of the tracks of the other for the purpose of switching cars, the duty to keep the tracks in safe condition for public travel devolves upon the party having dominion and control over them; and one company is not liable while thus using the tracks of the other for the results of a collision with a wagon, not due to want of care on its part, but to the defective condition of the tracks of the other company.

APPEAL—REVIEW—QUESTIONS DETERMINED. In an action for negligence in the maintenance of railroad tracks, where the evidence as to the nature of the defect is not brought up on appeal, the supreme court cannot determine the applicability of Laws 1899, p. 49, requiring railroads to adopt certain precautionary measures in the care of its tracks.

1 Reported in 82 Pac. 935.

PLEADINGS—ANSWER—ADMISSIONS. Where two railroads owned tracks on a certain street and the complaint alleged that one company operated trains at a certain point on the east side of said street, an answer denying all the allegations of the complaint except that the company operated trains on said street, does not admit that it operated trains on the tracks of the other company.

Appeal from a judgment of the superior court for King county, Griffin, J., entered December 27, 1904, upon the verdict of a jury rendered in favor of the defendants, after a trial on the merits, in an action for injuries sustained by a traveler crossing railroad tracks. Affirmed.

*S. H. Steele*, for appellant.

*L. C. Gilman*, for respondents.

RUDKIN, J.—Railroad avenue, between Yesler way and Washington street, in the city of Seattle, is one of the public thoroughfares of said city, but is largely used for railroad purposes. The Northern Pacific Railway Company and the Great Northern Railway Company own, operate, and control several tracks along said avenue between the above points. The tracks owned by each company are under its exclusive dominion and control, and are only used by the other company in the manner and for the purpose hereinafter stated. Whenever it becomes necessary to transfer freight cars from the tracks of one company to the tracks of the other, such transfer is made by means of a switch which connects the tracks of the two companies. Such transfer is sometimes made by the employees of one company, and sometimes by the employees of the other. Except for the purpose of effecting such transfer, neither company uses, or has any control over, the tracks of the other.

On the 7th day of August, 1903, the plaintiff was driving his horse and wagon diagonally across said Railroad avenue, and as he crossed one of the tracks of the Northern Pacific Railway Company, the wheel of his wagon dropped into a hole in said track, from two to eight inches wide, twelve

inches long, and ten inches deep, resulting from a failure
to block and securely guard the rail on said track, and be-
came fast.  While the plaintiff was endeavoring to release his
wagon, a locomotive owned by the defendant Great Northern
Railway Company, operated by the defendant Monohan, and
engaged in transferring freight cars as above set forth, ran
into the plaintiff, destroyed his wagon and harness, and in-
jured the plaintiff himself.  This action was brought to re-
cover damages for the injury to the plaintiff and his property.

Two grounds of negligence are alleged in the complaint;
first, the unsafe and defective condition of the track where
the injury occurred; and, second, negligence in the operation
of the locomotive that caused the injury.  The cause was tried
before a jury, resulting in a general verdict for the defend-
ants, accompanied by the following special finding:

"Q.   Did the defendant, the Great Northern Railway
Company, own or control, or was it under any contract or
agreement to construct, maintain or repair the track on which
the accident which is the subject of this action occurred?
A.   No."

Judgment was entered on the verdict in favor of the de-
fendants, and the plaintiff appeals.

The verdict of the jury eliminates the second ground of
negligence charged, viz., negligence in the operation of the
locomotive which caused the injury, and no error is assigned
on that branch of the case.  At the request of respondents,
the court instructed the jury as follows:

"One of the grounds of negligence alleged in the complaint
is that the track on which the accident occurred was so con-
structed as to be in a dangerous condition, and not admit of
the ready and free passage of vehicles across the same.  Upon
this question I charge you that, if you shall find from the
evidence in this case that the track in question was not the
property of the defendant company, and that it had no con-
trol over the same, and was under no agreement to construct, .
maintain or repair it, and was allowed to use it only as a mere

matter of convenience for the transfer of cars from tracks of its own system to those of another system, then the defendant company would be under no duty or obligation to the public to see that said tracks were properly constructed or kept in proper repair or properly maintained. The defendant company would be under no obligation to the public or otherwise to repair tracks belonging to another company, and of which it had no control, and concerning which it had made no agreement in reference to construction, maintenance or repair, and if you shall find from the evidence in this case that the track in question was not owned by, or in some way controlled by, defendant company, and that it was under no agreement to construct, maintain or repair it, and that the defendants properly and with due care operated the train which came in collision with the plaintiff's vehicle, then your verdict must be for the defendants."

The principal question discussed on this appeal arises out of the giving of the above instruction, and the refusal of the court to give other instructions, the substance of which is contained in the following:

"If you find from the evidence that at the time of the injury the defendant Great Northern Railway Company was operating its trains on the tracks where the plaintiff was injured on Railroad avenue, then and in that case it would be the duty of the defendant Great Northern Railway Company to use reasonable effort to keep said track in repair and in reasonably safe condition for public travel thereon."

In cases such as this the liability of a railway company depends upon its control over the agency causing the injury, or the duty it owes to the injured party. It owes one duty to a passenger, another to an employee, and still another to a stranger. Counsel for appellant cites and relies on the case of *Herrman v. Great Northern R. Co.,* 27 Wash. 472, 68 Pac. 82, 57 L. R. A. 390. In that case the plaintiff was injured on a sidewalk on the line of the defendant's road, in front of the depot where its trains arrived and departed, and where tickets were sold to intending passengers. The plaintiff went to this depot on business with the company, and with a view

of becoming a passenger on one of its trains. Under these facts this court held that it was the duty of the defendant company to keep the premises to which it invited its passengers to come to purchase tickets and take passage on its trains, as well as the approaches thereto, in a safe condition, and that it could not escape liability for an injury to one of its passengers, or to one occupying a similar position, by showing that the depot and the approaches thereto where the injury occurred were owned and controlled by an independent corporation. We fail to see the application of the case cited to the case at bar.

A railway company owes certain positive duties to its passengers which it cannot neglect or intrust to others. But the duty it owes to its passengers and the duty it owes to strangers are entirely different. To a passenger, it owes the duty to maintain a safe means of ingress and egress to and from its trains, whether it owns or controls the means or not. To a stranger, it owes the same duty as any other property owner. Had the plaintiff in the case cited been a mere stranger to the defendant company, he could not have recovered. In other words, the railway company in that case neglected a duty it owed to one of its passengers, but neglected no duty it owed to a stranger, unless it had dominion and control over the agency causing the injury.

The rule that the duty to keep premises in a safe condition devolves upon the party in possession and having control and dominion over them, is a very general one and is founded in reason. To hold a party liable in damages for the condition of property over which he has no control, and which he cannot repair without committing a trespass, is both unreasonable and unjust. As said by the court of appeals of New York, in *Reynolds v. Van Beuren*, 155 N. Y. 120, 49 N. E. 763, 42 L. R. A. 129:

"The foundation of the duty is the possession and right to manage and control the property. It would be manifestly

unjust to impose such a duty upon parties who have no possession and no dominion over it."

The question of the liability of lessors and lessees of railways is not involved in this case, as that relation manifestly did not exist between the Northern Pacific Railway Company and the Great Northern Railway Company, under the facts appearing in this record. We might say in passing, however, that while the law imposes liabilities on the lessors of railroad property which it does not, as a general rule, impose on the lessors of other property, yet the liability of the lessee of railroad property seems to be substantially the same, and to rest on the same foundation, as does the liability of the lessee of any other class of property. The case of *Trask v. Old Colony R. Co.,* 156 Mass. 298, 31 N. E. 6, arose under a statute, but the language of the court is pertinent here:

"The occasional use by each company of the track of the other, in delivering and taking cars in the course of business, would not, to that extent, make the track of each a part of the ways, works, or machinery of the other. It was permitted for their mutual accommodation, and was merely a license which did not give either any rights in or control over, and which did not impose upon either any obligation respecting the track of the other. The character of the business transacted is to be considered, and it would be unreasonable to hold that each company was bound to leave and take cars at the precise point of connection, at peril, if it did not do so, of making the track of the other part of its ways, works, and machinery, and of becoming liable for injuries resulting from any defect in it."

That the duty to keep premises in a safe condition of repair rests upon the party in possession, having control and dominion over them, and not upon parties who have neither control nor dominion nor the right to repair, see the following cases: *Gwathney v. Little Miami R. Co.,* 12 Ohio St. 92; *Engel v. New York etc. R. Co.,* 160 Mass. 260, 35 N. E. 547, 22 L. R. A. 283; *Coffee v. New York etc. R. Co.,* 155 Mass.

21, 28 N. E. 1128; *Regan v. Donovan,* 159 Mass. 1, 33 N. E. 702; *Liddle v. Keokuk etc. R. Co.,* 23 Iowa 378; *Parker v. Rensselaer etc. R. Co.,* 16 Barb. 315; *Byrne v. Kansas City etc. R. Co.,* 61 Fed. 605, 24 L. R. A. 693; *Miller v. Minnesota etc. R. Co.,* 76 Iowa 655, 39 N. W. 188, 14 Am. St. 258; *Harper v. Newport etc. R. Co.,* 90 Ky. 359, 14 S. W. 346; *Atwood v. Chicago etc. R. Co.,* 72 Fed. 447; *Lake Erie etc. R. Co. v. Gaughan,* 26 Ind. App. 1, 58 N. E. 1072; *Derrenbacher v. Lehigh Val. R. Co.,* 87 N. Y. 636; *East Line etc. R. Co. v. Culberson,* 68 Tex. 664; *Miller v. New York etc. R. Co.,* 125 N. Y. 118, 26 N. E. 35; *Evans v. Sabine etc. R. Co.* (Tex.), 18 S. W. 493.

Appellant also cites us to the act of March 6, 1899, Laws 1899, p. 49. The first section of said act requires every person or company owning or operating a railroad to block and securely guard frogs, switches, and guard-rails, so as to protect and prevent the feet of employees and other persons from being caught therein. The second section gives a right of action to parties injured from a failure to comply with the provisions of the act; and the third section imposes a penalty for its violation. The statement of this case, as contained in this opinion, is taken largely from the pleadings and briefs. The bill of exceptions does not contain all the testimony. In fact it contains none of the testimony showing the nature or character of the defect which is alleged to have caused or contributed to the injury. The application of this statute to the case before us is, therefore, not shown, and we must decline to consider it.

Nor is there any foundation for the contention that the pleadings admit that the respondent company operated trains on the track where the injury occurred. The third paragraph of the complaint alleged in general terms that the respondents were operating trains on Railroad avenue, near the east side thereof, and other facts not material here. The answer denied each and every allegation contained in said paragraph

except that the respondents were operating trains on Railroad avenue. We fail to discover any admission here.

Finding no error in the record, the judgment of the court below is affirmed.

MOUNT, C. J., CROW, DUNBAR, FULLERTON, HADLEY, and ROOT, JJ., concur.