SOUTHERN RAILWAY COMPANY, A CORPORATION, *Plaintiff in Error,* v. WILLIE MANN, *Defendant in Error.*

Division B.

Opinion Filed May 17, 1926.

*Cooper, Cooper & Osborne,* Attorneys for Plaintiff in Error;

*A. H. & Roswell King,* Attorneys for Defendant in Error.

TERRELL, J.—Willie Mann sued the Southern Railway Company in an action for damages in the sum of twenty-five thousand dollars ($25,000.00). The declaration is in three counts, the first and second of which in substance allege that on or about December 2nd, 1922, at or near the crossing of defendant's railroad track and Myrtle Avenue in the City of Jacksonville, Duval County, Florida, the defendant carelessly and negligently propelled and ran its train with great force and violence against and upon a Motorcycle which plaintiff was then and there driving, whereby plaintiff was painfully, seriously and permanently injured throughout his head, limbs and body and his arm was so badly bruised and crushed that it had to be amputated.

The third count of the declaration alleges all the allegations of the first and second counts and in addition thereto alleges carelessness and negligence on the part of defendant in not providing gates and a watchman at said crossing as it is required to do by ordinance number P-50 of the City of Jacksonville, approved June 4th, 1920.

The case was tried on the plea of the general issue and the plea of contributory negligence. At the conclusion of all the testimony the trial court took from the consideration of the jury, the first and second counts because there was no evidence to support them. On the record this action by the trial court was fully warranted. After considering the testimony in support of the third count the jury returned a verdict for the plaintiff in the sum of five thousand dollars ($5,000.00) on which final judgment was entered. Motion in arrest of judgment and for new trial

were denied and defendant took writ of error to the final judgment.

Did ordinance number P-50 of the City of Jacksonville, Duval County, Florida, as alleged in count three of the declaration impose on the Southern Railway Company the duty of providing gates with a watchman to operate them at the crossing described therein, may be stated as the *sole* question presented here for our consideration.

The pertinent part of the third count embracing said ordinance number P-50 is as follows:

"That the defendant was guilty of carelessness and negligence in the premises in this, to-wit, that defendant then and there carelessly and negligently failed and neglected to provide and maintain gates with a watchman to operate them at said crossing contrary to the provisions of ordinance number P-50 of the City of Jacksonville, Duval County, Florida, passed June 1st, 1920, as follows, to-wit:

"Be it ordained by the Mayor and City Council of the City of Jacksonville:

" 'Section 1. That Section 698 of the City Code, relating to railroad crossings, be and the same is hereby amended so as to read as follows:

"Section 698. Every person, firm or corporation operating a steam railroad upon and over the following street crossings shall protect the public at such crossings that shall be crossed by an engine, train or cars by providing gates with a watchman to operate them: Lackawanna Avenue, Stockton Street at Atlantic Coast Line Railroad crossing, Eighth Street, Myrtle Avenue, King's Road, Main Street and Pearl Street.

" 'Section 2. This ordinance shall take effect thirty days after its publication.' "

If the City of Jacksonville was authorized to enact this ordinance it applies to every person, firm or corporation operating a steam railroad upon or over the street crossings named therein, Myrtle Avenue crossing being one of them. The evidence shows conclusively that the owner and operator of the steam railroad crossing Myrtle Avenue where and at the time the accident in question took place was not the defendant, Southern Railway Company, but was the St. Johns River Terminal Company, the defendant Southern Railway Company being a mere lessee of said steam railroad.

The theory of the third count of the declaration was that of carelessness and negligence on the part of the defendant, Southern Railway Company, in failing to provide gates with a watchman to operate them at the Myrtle Avenue crossing in compliance with the terms of said ordinance. The defendant, Southern Railway Company, not being the owner or operator of the steam railroad brought in question, is not within the terms of the ordinance, consequently no duty was imposed on it to provide gates and a watchman to operate them at the said Myrtle Avenue crossing as was alleged in the declaration.

It is well settled both in law and in reason that the duty imposed by Ordinance Number P-50 devolves on the operator having possession, control and dominion over the steam railroad or railroads affected thereby. It is not shown that the Southern Railway Company as lessee had any such dominion or control as the ordinance contemplates, and to hold it liable in damages for the physical condition of the property over which it is shown to have no control, and which it cannot repair or improve without committing a trespass would be unsound and unreasonable. Lake Shore

& M. S. Ry. Co. v. Kaste, 11 Ill. App. 536; Hamble v. Atchison, T. & S. F. Ry. Co., 164 Fed. Rep. 410; Collier v. Great Northern R. Co., 40 Wash. 639, 82 Pac. Rep. 935; Smith v. St. Louis & S. F. Ry. Co., 85 Mo. 418, 55 Am. Rep. 380.

The evidence has been examined carefully and it shows on the part of the plaintiff that some timber grew near Myrtle Avenue crossing, which to some extent obstructed his view when approaching it, that he had known the location of the crossing and had been familiar with the general lay of the terrain for years, that the accident occurred about nine o'clock at night in a foggy atmosphere, that he (plaintiff) approached within a few feet of the crossing driving his motorcycle at a speed of fourteen miles per hour and that the train loomed up in front of him all at once without warning, when he immediately applied his brakes, locked his rear wheel and turned in the direction the train was running, struck the "cow catcher" and was knocked over in the ditch.

This testimony on the part of the plaintiff was corroborated in the main by three other witnesses, two of whom were his companions in the motorcycle at the time of the accident. It is the only testimony in the record on which the verdict of the jury could have been predicated. As to whether or not the train approached the crossing without giving warning the testimony on behalf of the plaintiff was largely of a negative character, while that of the defendant on this point was largely positive and was given by a number of witnesses, some of whom were bystanders, and others were employees of the defendant. The weight of the testimony is to the effect that the train with which plaintiff collided was one of about fifty tank cars and that plaintiff ran into the third or fourth car from the rear end of the train instead of the "cow catcher" as he testified.

By the well established rule of this court the record not only exhibits that degree of flagrant carelessness on the part of plaintiff as would bar recovery, but we think it meets and rebuts the presumption of negligence cast on it by the law and shows that the agents of the defendant exercised all ordinary and reasonable care and diligence in approaching the crossing. Seaboard Air Line Ry. v. Tomberlin, 70 Fla. 435, 70 South. Rep. 437; Tampa Electric Co. v. Bourquardez, 72 Fla. 161, 72 South. Rep. 668; Louisville & N. R. Co. v. Padgett, 71 Fla. 90, 70 South. Rep. 998; Dina v. Seaboard Air Line Ry., 106 So. 416—Fla.— Tampa & Gulf Coast Ry. v. Lynch, decided this term.

The question of whether or not the agents of the company (defendant) exercised all ordinary and reasonable care and diligence in approaching the crossing was one of fact to be determined by the weight and probative force of the evidence as other questions of fact are determined. The testimony of witnesses wholly or largely negative will not preponderate over the evidence of witnesses equally credible whose testimony is wholly or in the main positive as to this issue. The rights and obligations of plaintiff and defendant at the crossing were reciprocal, but the train of the defendant had the right of way, and while this fact no less released its duty to give due warning of its approach, it was equally the duty of the plaintiff to approach the crossing with ordinary care and prudence, and if he fails to do so, he must suffer the consequence of his conduct. Dina v. Seaboard Air Line, *supra*.

Reversed.

Whitfield, P. J., and Buford, J., concur;

Brown, C. J., And Ellis, J., concur in the opinion.